WWR#020196307

IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO (CLEVELAND)

| | |
|---|---|
| IN RE: | CASE NO. 20-10767 |
| GERALD W JONES | CHAPTER 13 |
| | JUDGE JESSICA E. PRICE SMITH |
| DEBTOR | |

COMMSTAR COMMUNITY CREDIT UNION'S
OBJECTION TO CONFIRMATION OF PLAN AS TO
5362 MIDDLEBURY COURT, SHEFFIELD VILLAGE, OH 44054

Now comes Creditor, CommStar Community Credit Union (hereinafter referred to as "Objecting Creditor"), claimant and party in interest in the above Chapter 13 proceeding, and pursuant to Bankruptcy Rule 3015, hereby OBJECTS to the Debtor's proposed Chapter 13 Plan (hereinafter referred to as "Plan"). For the factual, legal and statutory basis set forth in the attached Memorandum, confirmation of the Debtor's Plan should be DENIED.

WELTMAN, WEINBERG & REIS CO., L.P.A.

/s/ Milos Gvozdenovic
Milos Gvozdenovic (0077969)
Weltman, Weinberg & Reis
Attorney for Movant
965 Keynote Circle
Brooklyn Heights, OH 44131
216-739-5647
mgvozdenovic@weltman.com

## MEMORANDUM

1. On September 27, 2004, Gerald W Jones, (hereinafter referred to as "Debtor"), executed one Note and Mortgage using the property at 5362 MIDDLEBURY COURT, SHEFFIELD VILLAGE, OH 44054 as collateral for the loan. Copies of substantiating loan documentation are attached hereto and made a part hereof.

2. On February 11, 2020, Debtor filed a Chapter 13 petition and plan with this Court.

3. The total amount of CommStar Community Credit Union's claim is $23,980.93.

4. Debtor's plan fails to provide for CommStar Community Credit Union's loan which has fully matured.

8. The proposed plan should not be confirmed because it fails to properly address CommStar Community Credit Union's claim.

**WHEREFORE**, confirmation should be denied under 11 U.S.C. § 1325 (a)(5)(B)(ii).

WELTMAN, WEINBERG & REIS CO., L.P.A.

/s/ Milos Gvozdenovic
Milos Gvozdenovic (0077969)
Weltman, Weinberg & Reis
Attorney for Movant
965 Keynote Circle
Brooklyn Heights, OH 44131
216-739-5647
mgvozdenovic@weltman.com

## CERTIFICATE OF SERVICE

I hereby certify that on 26 day of February, 2020 a true and correct copy of the foregoing Objection to Confirmation Plan was served:

Via the Court's electronic case filing system on the following who are listed on the Court's Electronic Mail Notice List:

William J. Balena, Attorney for Debtor at docket@ohbksource.com

Lauren A. Helbling, Trustee at ch13trustee@ch13cleve.com

Office of the U. S. Trustee

and on the following by **ordinary U.S. Mail** addressed to:

GERALD W JONES
5362 Middlebury Ct
Sheffield Village, OH 44054

/s/ Milos Gvozdenovic
Milos Gvozdenovic (0077969)
Weltman, Weinberg & Reis
Attorney for Movant
965 Keynote Circle
Brooklyn Heights, OH 44131
216-739-5647
mgvozdenovic@weltman.com

Commstar Credit Union

COMMSTAR CREDIT UNION
832 CLEVELAND STREET
ELYRIA, OH 44035

## NOTE • DISCLOSURE • SECURITY AGREEMENT

In this Agreement the words "You" and "Your" mean any person signing below. If more than one person signs below, each person will be jointly and severally liable for repayment of the loan in full. This means that each person signing is responsible for repaying the loan in full. The terms on the reverse are a part of the entire Agreement. Items preceded by a box "☐" are applicable only if checked.

BORROWER NAME AND ADDRESS: GERALD W JONES, 5362 MIDDLEBURY CT, SHEFFIELD VILLAGE OH 44054-2988 ☐M ☐F AGE

EFFECTIVE DATE 9/27/04
ACCOUNT NUMBER [redacted]-53

CO-BORROWER NAME AND ADDRESS: RACHELLE L JONES, 5362 MIDDLEBURY CT, SHEFFIELD VILLAGE OH 4405-2988 ☐M ☐

MATURITY DATE 10/03/19
NOTE NUMBER

## CREDIT INSURANCE

Group Credit Insurance is voluntary and is not required to obtain credit. You cannot be denied credit simply because you choose not to buy credit insurance. You request the coverages elected below and agree to pay the required premium. Insurance will not be provided unless you sign below. Credit Disability is available on the primary borrower only.

| COVERAGE | TERM OF INSURANCE | INITIAL AMOUNT OF INSURANCE | ESTIMATED COST OF INSURANCE | MAXIMUM AMOUNT OF INSURANCE | MAXIMUM TERM OF INSURANCE |
|---|---|---|---|---|---|
| SINGLE DECREASING TERM LIFE | 390 mos. | 54,174.00 | | $30,000.00 | 120 mos. |
| JOINT DECREASING TERM LIFE | 390 mos. | 54,174.00 | | $30,000.00 | 120 mos. |
| TOTAL DISABILITY | 390 mos. | TOTAL PER MO. | | $30,000.00 TOTAL MONTHLY $750.00 | 120 mos. |

| DISABILITY WAITING PERIOD | DISABILITY BENEFITS BEGIN | HEALTH STATEMENT REQUIRED | SECOND BENEFICIARY | FIRST LOAN PAYMENT DATE |
|---|---|---|---|---|
| 14 DAYS | 1st DAY X RETRO ELIM | ☒YES ☐NO | | BEGINNING 11/04/0 |

| MAXIMUM AGE AT ISSUE - TOTAL DISABILITY | MAXIMUM AGE AT END OF TERM - TOTAL DISABILITY | MAXIMUM AGE AT ISSUE - LIFE | MAXIMUM AGE AT END OF TERM - LIFE |
|---|---|---|---|
| 65 | 70 | 65 | 70 |

By signing below you elect the types of coverage(s) indicated above and agree to pay the estimated cost of insurance disclosed.

Borrower________ Date________ Co-Borrower________ Date________
(Joint Life Coverage only)

CLC-CUOB(34)

| ANNUAL PERCENTAGE RATE THE COST OF YOUR CREDIT AS A YEARLY RATE | FINANCE CHARGE THE DOLLAR AMOUNT THE CREDIT WILL COST YOU | AMOUNT FINANCED THE AMOUNT OF CREDIT PROVIDED TO YOU OR ON YOUR BEHALF | TOTAL OF PAYMENTS THE AMOUNT YOU WILL HAVE PAID WHEN YOU HAVE MADE ALL PAYMENTS AS SCHEDULED |
|---|---|---|---|
| 6.990 % | $ 33,622.80 | $ 54,174.00 | $ 87,796.80 |

PAYMENT SCHEDULE

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | WHEN PAYMENTS ARE DUE |
|---|---|---|
| 390 BI-WEEKLY | 225.12 | BEGINNING 11/04/04 |

Bi-wk P.D.

THE ANNUAL PERCENTAGE RATE IS:
☒ A FIXED RATE. THIS IS THE YEARLY INTEREST RATE YOU WILL PAY FOR THE LIFE OF YOUR LOAN.
☐ A VARIABLE RATE. The Annual Percentage Rate may change (increase or decrease) during the term of this loan based on changes in an interest rate index which will be called the "index". The index is ________

The rate will not be changed by more than ____ percentage points on any change date. The change date is ____
The interest rate will not increase above ____ % or decrease below ____ %. Any increase will take the form of: ____

EXAMPLE:

PROPERTY INSURANCE: You may purchase property insurance from anyone you want that is acceptable to the Credit Union.

PREPAYMENT: If you pay off early you will not have to pay a penalty. ☐ The Annual Percentage Rate does not take into account your required deposit, if any.

LATE CHARGE: 10% OF MONTHLY PAYMENT AMOUNT; MAXIMUM $25.00.

FILING FEES:

SECURITY: You are giving a security interest in all present and future monies in the Credit Union in which you have an interest and in the following:
☒ The goods or property being purchased ☒ Collateral securing other loans with the Credit Union may also secure this loan.
☐ Deposit Account No. ____ for $ ____
☐ Other (Describe)

Additional Information: See your contract documents for any additional information about non-payment, default and any required repayment in full before the scheduled date, prepayment and refunds and penalties. "e" means an estimate.

PROMISE TO PAY
To repay this loan, you promise to pay the Credit Union $ 54,174.00 (the principal amount of this loan) plus simple interest at the initial rate of 6.990 % until this loan is repaid in full. If your Loan has a variable interest rate, the interest rate is tied to the movement of the index shown in the disclosure above.

**GRANT OF SECURITY INTEREST:** In addition to your pledge of shares and monies in the Credit Union, you pledge as security for this loan the collateral described below:

5362 MIDDLEBURY CT
SHEFFIELD LAKE, OHIO 44054

**ITEMIZATION:** The Credit Union or an affiliate of the Credit Union may retain a portion of the amount paid to others denoted by asterisk

Itemization of the amount financed of

| Amount given to you directly | Amount paid on your account | Prepaid Finance Charge | Amount paid to others on your behalf |
|---|---|---|---|
| .00 | | | SEE HUD |

**NOTICE TO CONSUMER: 1.) DO NOT SIGN THIS AGREEMENT BEFORE READING IT 2.) YOU ARE ENTITLED TO A COPY OF TH**

By signing below, you agree to make and be bound by this Note and Security Agreement including the terms and conditions on the reverse side. You acknowledge you that the credit union is named as first lienholder on any certificate of title, if applicable. If you are signing as "other owner of collateral" below, you are bound by the terms of only. You acknowledge that you have read this entire agreement and have received a copy.
Insurance products elected as part of this loan obligation are not insured by an agency of the federal government and the insurance is not guaranteed by the Cred
The Ohio laws against discrimination require that all creditors make credit equally available to all creditworthy customers and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio civil rights commission administers compliance with this law.

SIGNATURES

X [signature] (seal) 9/27/04 — FIRST BORROWER — DATE — [signature] WITNESS — (seal) 9/27/04 DATE

X [signature] (seal) 9/27/04 — SECOND BORROWER — DATE — [signature] WITNESS — (seal) 9/27/04 DATE

X [signature] (seal) — OTHER OWNER OF COLLATERAL — DATE

CONTRACT TERMS CONTINUED ON THE REVERSE

PROMISE [illegible] ... charge according to the payment schedule as each is set forth in the disclosure on the reverse side of this agreement. Your payment amount includes interest computed and payable at the Annual Percentage Rate shown in the disclosure on the outstanding balance of the Amount Financed from time to time. If the Finance Charge begins until repayment in full. The amount of your final payment (as well as the total Finance Charge and the total of Payments) will be somewhat more or less than the amounts disclosed if payments are not received promptly on scheduled due dates. If your loan is a variable rate loan, the interest is tied to the movements of the index shown in the disclosure of the reverse side. Therefore, either the amount of your periodic payments or the number of such payments are subject to change, and your final payment, finance charge, and total of payments will be different than disclosed. When received, your payment will be applied in the order collection costs then to any late charges, the FINANCE CHARGE owing, and then to the unpaid principal balance. Unpaid interest will be paid by later payments and will not be added to your unpaid principal balance.

VARIABLE RATE: If your loan is a variable rate loan as indicated by the box "☐" denoted variable rate on the reverse being checked, you understand that your contract interest rate may change (increase or decrease) from time to time during the life of your loan based upon movements of the index shown in the disclosure. If the index ceases to be made available by the publisher, or by any successor to the publisher, the Credit Union will set the interest rate by using a comparable index. Any increase in the interest rate will not be more than the stated limit in the disclosure for any change date.

EFFECTIVE DATE OF CHANGES: Each new interest rate will become effective on the next change date. If your monthly payment changes as a result of a change in the interest rate, your monthly payment will change as of the first monthly payment date after the change date. The change date is shown in the disclosure on the reverse. The Credit Union will mail you a notice by first class mail at least thirty days and no more than forty-five days before each Change Date if the interest rate is to change. The notice will advise you of: 1) The new interest rate on your loan; 2) The amount of your new monthly payments; and 3) Any additional matters which the Credit Union is required to disclose. In setting the monthly payment amount on each change date, the Credit Union will assume that the contract interest rate will not change again prior to the final payment date.

DEFAULT AND REPOSSESSION: You understand you will be in default (1) if you fail to make any payment on time; (2) in the event of your death; (3) in the event of your insolvency or the filing of any requests for relief under the bankruptcy code by or against you; (4) if you are the subject of any legal process which seeks to attach your Credit Union account, any of your property or wages; (5) if you have given the Credit Union false or inaccurate information in obtaining a loan or any other Credit Union services; (6) if you do any act or fail to do any act which the Credit Union believes endangers the collateral, if any, or your ability to repay what you owe, including but not limited to, leaving your current employment; (7) if you break any promise you have made under this or any other agreement with the Credit Union. (8) If you use the collateral in any illegal activity. In the event of a default, you understand that the decision to take action is the sole discretion of the Credit Union and the (the failure to) act on one default will not stop action on another. You further agree that the Credit Union does not have to provide you advance notice before taking action on any default, unless required to do so by applicable law. This agreement, the Uniform Commercial Code, and other applicable law, authorize the Credit Union to take various actions; and the Credit Union may rely on any or all of these sources.

The Credit Union may also file suit to recover the collateral and/or collect what you owe. If the Credit Union incurs any expenses in taking these actions, or in protecting its rights to the collateral, you promise to reimburse it and pay for all costs of collection, including court costs and reasonable attorney's fees as well as any less charges which might be imposed or as allowed by applicable law.

ENTIRE BALANCE DUE: If you default, all of your obligations under this contract will immediately be due without your receiving any advance notice. The undersigned individually and jointly waive presentment, demand, protest or notice of protest and any notice that the Credit Union is demanding payment of all of the entire outstanding balance under the contract because of default or for any other reason. If the Credit Union accepts any payment of your debt under the contract after having demanded payment on the entire unpaid balance due or after the Credit Union has sued you, this won't be considered a waiver or forgiveness of any default in payments or any other default on your part. The Credit Union will apply any such payments to your unpaid balance. The Credit Union can delay enforcing any of its rights without losing them.

LATE CHARGES: If any payment is made late, you may be charged a late charge. You agree to pay the late charge if any is disclosed in the disclosure on the reverse. In the event that applicable law is interpreted so that the interest or other charges collected in connection with this loan would exceed permitted limits, any such charges collected in connection with this loan would exceed permitted limits, any such charge shall be reduced by the amount necessary to reduce the total charge to the permitted limit and sums already collected which exceeded permitted limits shall be credited to the principal amount of your loan or refunded at the discretion of the Credit Union.

CO-SIGNER OR GUARANTOR: If you are signing this agreement as co-signer or guarantor, you waive your right to require the Credit Union to attempt collection of this account from the principal borrower first. You agree to be equally and severally responsible with the principal borrower for all advances and charges on this account. You understand that the Credit Union may elect to collect on this account from you first in the event of any default. You understand that all the terms of this agreement apply to you as well as the principal borrower and you waive the right of notice that you be notified of changes in the terms of this agreement.

ADDITIONAL PROVISIONS: Each provision of this agreement must be considered as part of the total agreement and cannot, in any way, be severed from it. However, you also agree that should any part of the agreement be found invalid, it will in no way affect the remainder of the agreement. The Credit Union's rights, powers and remedies under this agreement shall be cumulative and in addition to all rights, powers and remedies provided by law. No failure or delay by the Credit Union in exercising any such rights, power or remedy shall be deemed a waiver thereof. Any such waiver must be in writing signed by the Credit Union. You understand that the validity, construction and enforcement of this agreement shall be governed by the laws of the State of Ohio.

I authorize the use of electronic signatures, facsimile signatures and photocopied signatures for all purposes, said signatures to have the same force and effect as original signatures for all transactions, included in applications or agreements with the credit union.

CREDIT INSURANCE: The premiums for your credit life and/or disability insurance are based on your outstanding loan balance and paid as a part of your periodic payment. If you are late in paying or fail to make a periodic payment, the Credit Union may pay advance funds on your behalf to pay such premiums and may impose additional finance charges on the amount advanced. If you elected voluntary Credit Insurance, you understand that insurance rates are not guaranteed, however you will be notified in advance if they are to be changed.

OTHER TERMS: The Credit Union may delay taking any action to protect its rights as many times as it wants as long as it wants without losing them. If any part of this Agreement is determined by a court to be unenforceable, the rest will remain in effect. All of the Credit Union's rights shall inure to the benefit of its successors and assigns and all of your obligations shall bind your heirs or legal representatives.

TREATMENT OF PAYMENTS: Payments must be received at any branch by closing on a business day to be credited to your account as of that same day. If any payments made by you are less than the total payment due, the Credit Union may allocate such payment at its sole discretion.

NOTICE: You agree and attest that your name and address shown herein is your legal name and the place of your residence, and such address is the proper address for all notice(s) required by this Agreement, and you further understand that any changes in this address must be submitted to the Credit Union in writing to be effective

SECURITY INTEREST: By signing this Agreement [illegible] described on the reverse side, you are giving the Credit Union a security interest in the property described on the reverse side, and all present and future shares you have in any account in the Credit Union in which you have an interest. Under the Federal Credit Union Act, we have a statutory lien on your shares and other deposits. This means the Credit Union may place a lien on (freeze) your present and future shares, share certificates & its dividends to the extent of that portion of your loan that is in default. You are also giving a security interest in all present and future checking accounts you have with the Credit Union. You authorize the Credit Union to take that money and apply it to what you owe if you are in default. The Credit Union may, but does not have to, allow you to withdraw a portion of your shares or monies without affecting its security interest. You are not giving a security interest in any shares or monies in any IRA, SEP, KEOGH, or any other account which if pledged, would result in the loss of special tax treatment under the Internal Revenue Code. The security interest covers not only the property but all proceeds, substitutions or replacements, accessions, improvements, all proceeds from insurance and all refunds of unearned premiums. The security interest also includes any replacements for the property which you buy within 10 days of this loan or any extensions, renewals, or refinancing of the loan. Any time this agreement refers to collateral, it means any or all of the property described on the reverse. You are giving this interest to secure repayment of your loan as well as any other amounts you now owe or will owe the Credit Union. If the collateral is household goods as defined in the Federal Trade Commission Fair Credit Practices Rule, it only secures obligations for the purchase money for the collateral or refinancing or consolidation of such obligations. However, cross collateralization does not extend to any dwelling.

CROSS COLLATERALIZATION: You hereby grant a security interest to the Credit Union in all assets and collateral separately pledged to the Credit Union as collateral for this, or any loan transaction. You further agree that any security interest granted to secure this loan shall also collateralize any other indebtedness that you may now have or may have in the future with the Credit Union. It is the intention of this grant to provide for cross-collateralization. To further secure the payment of this loan and all other indebtedness to the Credit Union now owed or hereafter owed by you, whether or not said indebtedness was intended to be secured or personal, you grant a security interest to the Credit Union in all assets of whatever nature and kind, that are pledged hereby as collateral for the within indebtedness. This provision is intended to create cross-collateralization. However, cross collateralization does not extend to any dwelling.

PROTECTION OF COLLATERAL: You promise that you will use the proceeds of this loan to buy the collateral or that you own the collateral and that no one else has any interest in it or claim against it. If you do not make your payments as required, or if any other event described in the Default and Repossession paragraph occurs, the Credit Union can take the Collateral without breach of the peace, and sell it to reduce your debt after giving you the proper notice or it can take advantage of any other rights and remedies given to secured parties under the Uniform Commercial Code or other applicable law. You agree: (a) to maintain, protect and preserve the Collateral; (b) not to use or permit any one to use the Collateral in violation of this agreement, or any statute, regulation or ordinance or any policy of insurance covering the Collateral; (c) to pay promptly when due all taxes, charges, encumbrances or liens now or later imposed upon or affecting the Collateral; (d) to notify the Credit Union promptly of any change of your name or address on file; (e) to help the Credit Union do all that is necessary to protect the Credit Union's security interest in the Collateral, including giving the Credit Union all endorsements, assignments, financing statements, or other writings which are necessary to protect the Credit Union's security interest and its priority; (f) not to sell, encumber, lease, rent, otherwise dispose of, or give the Collateral to anyone else other than the Credit Union; (g) to promptly deliver to the Credit Union in the form received, all proceeds of the Collateral you receive; (h) at any reasonable time, upon the Credit Union's demand, to exhibit to the Credit Union and allow the Credit Union to inspect the Collateral. You warrant that title to said collateral shall be registered in the name only of such debtor/debtors signatory hereto. You promise to have the Credit Union's security interest shown on any certificate of title that may be issued. You give the Credit Union authorization to file a financing statement to protect its security interest from the claims of others. Secured party may act on and direction or authorization of any undersigned borrower.

PROPERTY INSURANCE AND TAXES: You are required to fully insure the collateral against loss and damage and pay all taxes due. You may obtain this insurance through any insurance company of your choice, unless the Credit Union, for good cause, refuses to accept it. You agree that if the Credit Union does not receive a copy of your policy within 30 days, and in deductible amounts acceptable, it is authorized to obtain any type of insurance to protect the Credit Union from financial loss. THE INSURANCE WILL NOT BE LIABILITY INSURANCE. This could result in less protection for you and at a higher cost. The Credit Union will add the premium for this insurance to the applicable loan account and charge you a FINANCE CHARGE at the applicable rate. You agree that the Credit Union may increase your payment by an amount sufficient to repay any charges added by the Credit Union for property insurance and taxes in accordance with the originally scheduled term. You promise to have any insurance policy payable to the Credit Union and, if asked, to deliver it to the Credit Union. The policies for such insurance must say that the Credit Union is to be paid if there is a loss. If the Collateral is lost or damaged, the Credit Union can use the insurance proceeds to replace or repair it, or to repay any amount you owe the Credit Union. You also promise to pay all taxes due on the collateral. If you fail to do so, the Credit Union may, but does not have to pay the taxes and add the amount to the unpaid principal balance of the loan and charge you a FINANCE CHARGE at the same rate as your loan.

DEFAULT: You will be in default if you break any promise made under the security agreement or if you are in default on your loan. If you are pledging property as an other owner of collateral, you will be in default if anyone who signed or otherwise authenticated the Note is in default.

DEFAULT REMEDIES: When you are in default and after expiration of any right you have under applicable state law to cure your default, the Credit Union can require immediate payment of your outstanding balance. You agree that the Credit Union has the right to take possession of the property without judicial process, and you authorize a right of entry (other than to a dwelling) for repossession. The Credit Union will not be responsible for any personal property not covered by this Agreement that you leave inside the property or that is attached to the property. The Credit Union will try to return that property to you. After the credit union takes repossession of the property, the Credit Union can sell it and apply that money to what you owe. The Credit Union will give you notice of any public sale or the date when a private sale will be held. The Credit Union will deduct its expenses for taking possession of the property and for any commercially reasonable preparation or processing, storage and reasonable attorney's fees to the extent permitted under state law or awarded under Bankruptcy Code. The rest of the sale money has been applied to the unpaid balance and what you owe. You will pay interest on that amount at the loan interest rate until the amount has been repaid.

OTHER RIGHTS: The Credit Union may delay taking any action to protect its rights as many times as it wants and as long as it wants without losing them. If the Credit Union changes any of the terms of this agreement or the loan, you agree that the security interest will continue to protect the Credit Union. Use of the term "you" and "your" includes any person who signs this document. By signing, any such person agrees to all the terms and conditions and promises to perform all the obligations, requirements and duties contained in this agreement.

RELEASE OF COLLATERAL: If the Credit releases collateral for sale by you, proceeds will be applied to your loan. You understand that if a balance remains owing after sale proceeds are applied to your loan, you are obligated to continue making scheduled periodic payments in accordance with the payment schedule of your loan with the Credit Union.

GENERAL: No waiver by Secured Party of any default shall operate as a waiver of any other default or of the same default on a future occasion. All rights of Secured Party hereunder shall inure to the benefit of its successors and assigns; and all obligations of Borrower shall bind his heirs, executors or administrators or his or its successors or assigns. If there is more than one Borrower, their obligations hereunder shall be joint and several. This agreement shall become effective when it is signed by Borrower.

NOTICE: You agree and attest that your name and address shown herein is your legal name and the place of your residence, and such address is the proper address for all notice(s) required by this Agreement, and you further understand that any changes in this address must be submitted to the Credit Union in writing to be effective

OEO3OHIO

Signature of Co-Signer(s)/Guarantor: In consideration of the Credit Union's loan to the Borrower(s), you understand that, in the event of a default by the Borrower(s), we may seek immediate payment from you of any and all sums due without making prior demand for payment upon the Borrower(s). You waive notice of acceptance of this guaranty, of any extensions in time of payment, of sale or release of any collateral for this loan and of all other notices of which you would otherwise be entitled to receive by law.

| | | |
|---|---|---|
| ____________________ (SEAL) | | ____________________ (SEAL) |
| Co-Signer/Guarantor Date | | Notary Date |
| ____________________ (SEAL) | | ____________________ (SEAL) |
| Co-Signer/Guarantor Date | | Notary Date |

THE COLLATERAL DESCRIPTION ON THE REVERSE SIDE IS PART OF THIS AGREEMENT.
NOTICE: SIGN THIS AGREEMENT ON THE REVERSE SIDE.

Copyright 1990 CommStar Systems, Inc., Peachtree City, GA 30269—CFS47706-6C Rev. 10/01

03195b#2132

State of Ohio —— Space Above This Line For Recording Data ——

# OPEN-END MORTGAGE
(With Future Advance Clause)

1. **DATE AND PARTIES.** The date of this Mortgage (Security Instrument) is .......................................... and the parties, their addresses and tax identification numbers, if required, are as follows:

MORTGAGOR: Gerald W. Jones & Rachelle L. Jones
Husband & Wife

☐ If checked, refer to the attached Addendum incorporated herein, for additional Mortgagors, their signatures and acknowledgments.

LENDER: CommStar Credit Union
832 Cleveland St
Elyria, Ohio 44035

2. **CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, upon the statutory condition, and to secure the Secured Debt (defined below) and Mortgagor's performance under this Security Instrument, Mortgagor grants, bargains, conveys and mortgages to Lender, with mortgage covenants, the following described property:

Situated in the Village of Sheffield, County of Lorain and State of Ohio, and being known as Sub Lot No 80 in Village Reserve Subdivision No. 5 of part of Original Sheffield Township Lot No 2, as shown by the recorded plat in Volume 59, Page 19 of Lorain County Map Records, as appears by said plat, be the same more or less.

UNOFFICIAL

The property is located in ........Lorain........ (County) at ..........

5362 Middlebury Ct (Address), Sheffield Village (City), Ohio 44054 (ZIP Code)

Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian rights, ditches, and water stock and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described above (all referred to as "Property").

3. **MAXIMUM OBLIGATION LIMIT.** The total principal amount secured by this Security Instrument at any one time shall not exceed $ .....54,174.00.......................... . This limitation of amount does not include interest and other fees and charges validly made pursuant to this Security Instrument. Also, this limitation does not apply to advances made under the terms of this Security Instrument to protect Lender's security and to perform any of the covenants contained in this Security Instrument.

4. **SECURED DEBT AND FUTURE ADVANCES.** The term "Secured Debt" is defined as follows:
   A. Debt incurred under the terms of all promissory note(s), contract(s), guaranty(s) or other evidence of debt described below and all their extensions, renewals, modifications or substitutions. *(When referencing the debts below it is suggested that you include items such as borrowers' names, note amounts, interest rates, maturity dates, etc.)*

Experе™ © 1994 Bankers Systems, Inc., St. Cloud, MN Form RE-MTG-OH 1/8/2002

B. All future advances from Lender to Mortgagor or other future obligations of Mortgagor to Lender under any promissory note, contract, guaranty, or other evidence of debt executed by Mortgagor in favor of Lender after this Security Instrument whether or not this Security Instrument is specifically referenced. If more than one person signs this Security Instrument, each Mortgagor agrees that this Security Instrument will secure all future advances and future obligations that are given to or incurred by any one or more Mortgagor, or any one or more Mortgagor and others. All future advances and other future obligations are secured by this Security Instrument even though all or part may not yet be advanced. All future advances and other future obligations are secured as if made on the date of this Security Instrument. Nothing in this Security Instrument shall constitute a commitment to make additional or future loans or advances in any amount. Any such commitment must be agreed to in a separate writing.

C. All obligations Mortgagor owes to Lender, which may later arise, to the extent not prohibited by law, including, but not limited to, liabilities for overdrafts relating to any deposit account agreement between Mortgagor and Lender.

D. All additional sums advanced and expenses incurred by Lender for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

This Security Instrument will not secure any other debt if Lender fails to give any required notice of the right of rescission.

5. **PAYMENTS.** Mortgagor agrees that all payments under the Secured Debt will be paid when due and in accordance with the terms of the Secured Debt and this Security Instrument.

6. **PRIOR SECURITY INTERESTS.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Mortgagor agrees:

A. To make all payments when due and to perform or comply with all covenants.

B. To promptly deliver to Lender any notices that Mortgagor receives from the holder.

C. Not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written consent.

7. **CLAIMS AGAINST TITLE.** Mortgagor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Mortgagor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Mortgagor's payment. Mortgagor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Mortgagor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Mortgagor may have against parties who supply labor or materials to maintain or improve the Property. Lender is authorized to do all things provided to be done by a mortgagee under section 1311.14 of the Ohio Revised Code.

8. **DUE ON SALE OR ENCUMBRANCE.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable. This covenant shall run with the Property and shall remain in effect until the Secured Debt is paid in full and this Security Instrument is released.

9. **PROPERTY CONDITION, ALTERATIONS AND INSPECTION.** Mortgagor will keep the Property in good condition and make all repairs that are reasonably necessary. Mortgagor shall not commit or allow any waste, impairment, or deterioration of the Property. Mortgagor will keep the Property free of noxious weeds and grasses. Mortgagor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Mortgagor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Mortgagor will notify Lender of all demands, proceedings, claims and actions against Mortgagor, and of any loss or damage to the Property.

Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender shall give Mortgagor notice at the time of or before an inspection specifying a reasonable purpose for the inspection. Any inspection of the Property shall be entirely for Lender's benefit and Mortgagor will in no way rely on Lender's inspection.

10. **AUTHORITY TO PERFORM.** If Mortgagor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may, without notice, perform or cause them to be performed. Mortgagor appoints Lender as attorney in fact to sign Mortgagor's name or pay any amount necessary for performance. Lender's right to perform for Mortgagor shall not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument. If any construction on the Property is discontinued or not carried on in a reasonable manner, Lender may take all steps necessary to protect Lender's security interest in the Property, including completion of the construction.

11. **ASSIGNMENT OF LEASES AND RENTS.** Mortgagor irrevocably grants, bargains, conveys and mortgages to Lender as additional security all the right, title and interest in and to any and all existing or future leases, subleases, and any other written or verbal agreements for the use and occupancy of any portion of the Property, including any extensions, renewals, modifications or substitutions of such agreements (all referred to as "Leases") and rents, issues and profits (all referred to as "Rents"). Mortgagor will promptly provide Lender with true and correct copies of all existing and future Leases. Mortgagor may collect, receive, enjoy and use the Rents so long as Mortgagor is not in default under the terms of this Security Instrument.

Mortgagor agrees that this assignment is immediately effective between the parties to this assignment and effective as to third parties on Mortgagor's default when Lender takes actual possession of the Property, when a receiver is appointed, when Lender commences a foreclosure on the Property or as the law otherwise provides, and this assignment will remain effective during any redemption period until the Secured Debt is satisfied. Mortgagor agrees that Lender may take actual possession of the Property without the necessity of commencing any legal action or proceeding and Mortgagor agrees that actual possession of the Property is deemed to occur when Lender notifies Mortgagor of the default and demands that Mortgagor and Mortgagor's tenants pay all Rents due and to become due directly to Lender. On receiving notice of default, Mortgagor will endorse and deliver to Lender any payment of Rents in Mortgagor's possession and will receive any Rents in trust for Lender and will not commingle the Rents with any other funds. Any amounts collected will be applied as provided in this Security Instrument. Mortgagor warrants that no default exists under the Leases or any applicable landlord/tenant law. Mortgagor also agrees to maintain and require any tenant to comply with the terms of the Leases and applicable law.

12. **LEASEHOLDS; CONDOMINIUMS; PLANNED UNIT DEVELOPMENTS.** Mortgagor agrees to comply with the provisions of any lease if this Security Instrument is on a leasehold. If the Property includes a unit in a

condominium or a planned unit development, Mortgagor will perform all of Mortgagor's duties under the covenants, by-laws, or regulations of the condominium or planned unit development.

13. **DEFAULT.** Mortgagor will be in default if any party obligated on the Secured Debt fails to make payment when due. Mortgagor will be in default if a breach occurs under the terms of this Security Instrument or any other document executed for the purpose of creating, securing or guarantying the Secured Debt. A good faith belief by Lender that Lender at any time is insecure with respect to any person or entity obligated on the Secured Debt or that the prospect of any payment or the value of the Property is impaired shall also constitute an event of default.

14. **REMEDIES ON DEFAULT.** In some instances, federal and state law will require Lender to provide Mortgagor with notice of the right to cure or other notices and may establish time schedules for foreclosure actions. Subject to these limitations, if any, Lender may accelerate the Secured Debt and foreclose this Security Instrument in a manner provided by law if Mortgagor is in default.

    At the option of Lender, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or anytime thereafter. In addition, Lender shall be entitled to all the remedies provided by law, the terms of the Secured Debt, this Security Instrument and any related documents. All remedies are distinct, cumulative and not exclusive, and the Lender is entitled to all remedies provided at law or equity, whether or not expressly set forth. The acceptance by Lender of any sum in payment or partial payment on the Secured Debt after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Lender's right to require complete cure of any existing default. By not exercising any remedy on Mortgagor's default, Lender does not waive Lender's right to later consider the event a default if it continues or happens again.

15. **EXPENSES; ADVANCES ON COVENANTS; ATTORNEYS' FEES; COLLECTION COSTS.** Except when prohibited by law, Mortgagor agrees to pay all of Lender's expenses if Mortgagor breaches any covenant in this Security Instrument. Mortgagor will also pay on demand any amount incurred by Lender for insuring, inspecting, preserving or otherwise protecting the Property and Lender's security interest. These expenses will bear interest from the date of the payment until paid in full at the highest interest rate in effect as provided in the terms of the Secured Debt. Mortgagor agrees to pay all costs and expenses incurred by Lender in collecting, enforcing or protecting Lender's rights and remedies under this Security Instrument. This amount may include, but is not limited to, attorneys' fees, court costs, and other legal expenses. This Security Instrument shall remain in effect until released. Mortgagor agrees to pay for any recordation costs of such release.

16. **ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), and all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substances," "hazardous waste" or "hazardous substance" under any Environmental Law.

    Mortgagor represents, warrants and agrees that:

    A. Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance is or will be located, stored or released on or in the Property. This restriction does not apply to small quantities of Hazardous Substances that are generally recognized to be appropriate for the normal use and maintenance of the Property.

    B. Except as previously disclosed and acknowledged in writing to Lender, Mortgagor and every tenant have been, are, and shall remain in full compliance with any applicable Environmental Law.

    C. Mortgagor shall immediately notify Lender if a release or threatened release of a Hazardous Substance occurs on, under or about the Property or there is a violation of any Environmental Law concerning the Property. In such an event, Mortgagor shall take all necessary remedial action in accordance with any Environmental Law.

    D. Mortgagor shall immediately notify Lender in writing as soon as Mortgagor has reason to believe there is any pending or threatened investigation, claim, or proceeding relating to the release or threatened release of any Hazardous Substance or the violation of any Environmental Law.

17. **CONDEMNATION.** Mortgagor will give Lender prompt notice of any pending or threatened action, by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Mortgagor authorizes Lender to intervene in Mortgagor's name in any of the above described actions or claims. Mortgagor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds shall be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

18. **INSURANCE.** Mortgagor shall keep Property insured against loss by fire, flood, theft and other hazards and risks reasonably associated with the Property due to its type and location. This insurance shall be maintained in the amounts and for the periods that Lender requires. What Lender requires pursuant to the preceding two sentences can change during the term of the loan. The insurance carrier providing the insurance shall be chosen by Mortgagor subject to Lender's approval, which shall not be unreasonably withheld. If Mortgagor fails to maintain the coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property according to the terms of this Security Instrument.

    All insurance policies and renewals shall be acceptable to Lender and shall include a standard "mortgage clause" and, where applicable, "loss payee clause." Mortgagor shall immediately notify Lender of cancellation or termination of the insurance. Lender shall have the right to hold the policies and renewals. If Lender requires, Mortgagor shall immediately give to Lender all receipts of paid premiums and renewal notices. Upon loss, Mortgagor shall give immediate notice to the insurance carrier and Lender. Lender may make proof of loss if not made immediately by Mortgagor.

    Unless otherwise agreed in writing, all insurance proceeds shall be applied to the restoration or repair of the Property or to the Secured Debt, whether or not then due, at Lender's option. Any application of proceeds to principal shall not extend or postpone the due date of the scheduled payment nor change the amount of any payment. Any excess will be paid to the Mortgagor. If the Property is acquired by Lender, Mortgagor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Lender to the extent of the Secured Debt immediately before the acquisition.

19. **ESCROW FOR TAXES AND INSURANCE.** Unless otherwise provided in a separate agreement, Mortgagor will not be required to pay to Lender funds for taxes and insurance in escrow.

Expere™ © 1994 Bankers Systems, Inc., St. Cloud, MN Form RE-MTG-OH 1/8/2002

UNOFFICIAL

**20. FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Mortgagor will provide to Lender upon request, any financial statement or information Lender may deem reasonably necessary. Mortgagor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Mortgagor's obligations under this Security Instrument and Lender's lien status on the Property.

**21. JOINT AND INDIVIDUAL LIABILITY; CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND.** All duties under this Security Instrument are joint and individual. If Mortgagor signs this Security Instrument but does not sign an evidence of debt, Mortgagor does so only to mortgage Mortgagor's interest in the Property to secure payment of the Secured Debt and Mortgagor does not agree to be personally liable on the Secured Debt. If this Security Instrument secures a guaranty between Lender and Mortgagor, Mortgagor agrees to waive any rights that may prevent Lender from bringing any action or claim against Mortgagor or any party indebted under the obligation. These rights may include, but are not limited to, any anti-deficiency or one-action laws. Mortgagor agrees that Lender and any party to this Security Instrument may extend, modify or make any change in the terms of this Security Instrument or any evidence of debt without Mortgagor's consent. Such a change will not release Mortgagor from the terms of this Security Instrument. The duties and benefits of this Security Instrument shall bind and benefit the successors and assigns of Mortgagor and Lender.

**22. APPLICABLE LAW; SEVERABILITY; INTERPRETATION.** This Security Instrument is governed by the laws of the jurisdiction in which Lender is located, except to the extent otherwise required by the laws of the jurisdiction where the Property is located. This Security Instrument is complete and fully integrated. This Security Instrument may not be amended or modified by oral agreement. Any section in this Security Instrument, attachments, or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section of this Security Instrument cannot be enforced according to its terms, that section will be severed and will not affect the enforceability of the remainder of this Security Instrument. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Security Instrument are for convenience only and are not to be used to interpret or define the terms of this Security Instrument. Time is of the essence in this Security Instrument.

**23. NOTICE.** Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address on page 1 of this Security Instrument, or to any other address designated in writing. Notice to one mortgagor will be deemed to be notice to all mortgagors.

**24. WAIVERS.** Except to the extent prohibited by law, Mortgagor waives all rights of appraisement, marshalling of liens and assets, and homestead exemption rights relating to the Property. Mortgagor does hereby remise, release, and forever quitclaim all their right and title of dower in the Property to Lender.

**25. OTHER TERMS.** If checked, the following are applicable to this Security Instrument:

☐ **Line of Credit.** The Secured Debt includes a revolving line of credit provision. Although the Secured Debt may be reduced to a zero balance, this Security Instrument will remain in effect until released.

☐ **Construction Loan.** This Security Instrument secures an obligation incurred for the construction of an improvement on the Property.

☐ **Fixture Filing.** Mortgagor grants to Lender a security interest in all goods that Mortgagor owns now or in the future and that are or will become fixtures related to the Property. This Security Instrument suffices as a financing statement and any carbon, photographic or other reproduction may be filed of record for purposes of Article 9 of the Uniform Commercial Code.

☐ **Riders.** The covenants and agreements of each of the riders checked below are incorporated into and supplement and amend the terms of this Security Instrument. [Check all applicable boxes]
☐ Condominium Rider ☒ Planned Unit Development Rider ☐ Other ........

☐ **Additional Terms.**

UNOFFICIAL

**SIGNATURES:** By signing below, Mortgagor agrees to the terms and covenants contained in this Security Instrument and in any attachments. Mortgagor also acknowledges receipt of a copy of this Security Instrument on the date stated on page 1.

| [signature] Gerald W. Jones | 9/27/04 | [signature] Rachelle L. Jones | 9/27/04 |
|---|---|---|---|
| (Signature) | (Date) | (Signature) | (Date) |

**ACKNOWLEDGMENT:**

STATE OF Ohio, COUNTY OF Lorain } ss.

(Individual) This instrument was acknowledged before me this ........ day of ........
by Gerald W. & Rachelle L. Jones
My commission expires: 6/25/2006 [signature] (Notary Public)
(Seal)

ROSEMARY WISE
Notary Public, State of Ohio
My Commission Expires June 25, 2006

This instrument was prepared by ........
CommStar Credit Union

LCTC

031956

UNOFFICIAL

JUDITH ... LORAIN COUNTY RECORDER

2004 OCT -5 P 1:36

RECEIVED FOR RECORD